UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. |
| | : | |
| | : | **VIOLATIONS:** |
| | : | |
| v. | : | 18 U.S. C. § 201(b)(1)(A) |
| | : | (Payment of a Bribe to a Public |
| | : | Official) |
| **EMAD O. HAJHASSAN,** | : | |
| | : | **FORFEITURE:** |
| | : | |
| | : | 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. |
| | : | § 2461(c), 21 U.S.C. § 853(p) |

## INFORMATION

The United States Attorney informs the Court that:

### Introduction

1. Defendant **EMAD O. HAJHASSAN**, a resident of Alexandria, Virginia, was the owner of ABLE TOWING, INC., which was located in 1800 block of Adams Mill Road, N.W., in the District of Columbia.

2. V.M.G. was a Customer Services Representative with the District of Columbia's Department of Public Works, Parking Enforcement Management Administration ("DPW/PEMA"), located in the 1700 block of 16th Street, N.E., in the District of Columbia.

3. Public Official Number Two was a Public Vehicle Enforcement Inspector ("Hack Inspector") with the District of Columbia Taxicab Commission ("DCTC"), located in the 2000 block of Martin Luther King, Jr. Avenue, S.E., in the District of Columbia.

### Payments to V.M.G. for steering DPW/PEMA towing assignments to Able Towing, Inc.

4. The Department of Public Works (DPW) provided municipal services in two distinct program areas: environmental services/solid waste management and parking

enforcement. Both contributed to making District streets and public spaces clean, safe, attractive and accessible. The DPW/PEMA provided for the removal of abandoned and dangerous vehicles, as well as ticketing, towing, booting and impoundment of vehicles that were in violation of District of Columbia parking regulations. DPW/PEMA also towed vehicles that posed a danger to the public or impeded the flow of traffic, particularly after vehicle accidents.

5. DPW/PEMA utilized a Central Aided Dispatch (CAD) system which enabled DPW/PEMA to communicate with the Metropolitan Police Department in an orderly manner when the Metropolitan Police Department needed vehicles to be towed. Each DPW/PEMA Customer Services Representative was assigned a unique CAD user code and identification number. All transactions that were entered, deleted or modified in the CAD system were tracked and maintained under a user code and identification number. V.M.G. was assigned a unique user code and identification number.

6. DPW/PEMA did not have enough tow trucks in their fleet to address all of the needs of the District of Columbia. Therefore, DPW/PEMA subcontracted towing services from a list of approximately twenty-two authorized tow truck companies in the District of Columbia to assist DPW/PEMA with vehicle removals. DPW/PEMA required that all Customer Service Representatives rotate among all twenty-two companies to assure that towing services were fairly distributed in an equitable manner. Specifically, DPW/PEMA protocol required that after notifying an authorized towing company of an assignment, the Customer Service Representative was responsible for logging the transaction into the CAD system and noting the specific towing company assigned in a manual log so that the next authorized towing company could be utilized in the rotational listing on the next towing assignment.

7. In order to be included on DPW/PEMA's authorized rotational towing list, a towing company was required to have all of the following: (1) a license for a locked storage facility; (2) a towing license, and (3) insurance. ABLE TOWING, INC. was on DPW/PEMA's rotational list of authorized towing companies.

8. As a Customer Services Representative, V.M.G. was responsible for, among other things, providing dispatching services for cranes, tow trucks and supplemental dispatching services for all types of towing requests to impound illegally parked vehicles, vehicles causing a safety hazard, emergency tows during snow emergencies, special events, vehicle accidents, as well as community events. In addition to receiving requests to tow vehicles, V.M.G. was also responsible for entering accurate relevant information into the appropriate computer system, and for dispatching the appropriate government or private towing company on a rotational basis.

9. Beginning on or about every Friday afternoon from approximately July 1, 2011, and continuing through on or about May 24, 2013, defendant **EMAD O. HAJHASSAN**, the owner of ABLE TOWING, INC., personally deposited between $200.00 to $500.00 in cash into V.M.G's BB&T checking account ending in XXXX-5580. In return, V.M.G. utilized her a unique user code and identification number on the CAD system, often cancelled towing assignments to other towing companies and re-assigned them to ABLE TOWING, INC., thus disregarding the rotational towing assignment system. As a result, ABLE TOWING, INC. received extra towing assignments for which it was not entitled.

Payments to Public Official Number Two for steering DCTC<br>towing assignments to Able Towing, Inc.

10. The DCTC was a subordinate agency within the executive branch of the District of Columbia government with exclusive authority for intrastate regulation of the taxicab industry. The DCTC, among other things, established criteria, standards, and requirements for

obtaining a taxicab license, including the licensing of owners, operators, companies, associations, and fleets. It also established licensing fees and enforced Title 31 of the D.C. Municipal regulations governing taxicabs and vehicles for hire. The DCTC employed a number of Hack inspectors who patrolled the District of Columbia to assure that taxicabs and other vehicles for hire were in compliance with the District's rules and regulations. Hack Inspectors were authorized to ticket, and in some cases tow and impound, vehicles that were not properly licensed, posed a public safety risk or were operating illegally in the District of Columbia. Taxicabs that were determined to be in violation of D.C. taxicab regulations were subject to towing and impoundment.

11. During the period of in or about January, 2011 through in or about June 2013, DCTC utilized six(6) towing companies, including ABLE TOWING, INC., to tow and impound taxicabs that were in violation of D.C. taxicab regulations.

12. From in or about January, 2011 through in or about June, 2013, defendant **EMAD O. HAJHASSAN**, the owner of ABLE TOWING, INC., gave approximately $400.00 in cash per month (or $12,000.00) to DCTC Hack Inspector Public Official Number Two. In return, Public Official Number Two steered approximately 80% of his/her towing and impoundment assignments to ABLE TOWING, INC.

## COUNT ONE
(Payment of a Bribe to a Public Official)

13. Paragraphs one, two and four to nine are re-alleged and incorporated by reference as if fully set forth herein.

14. Beginning on or about July 1, 2011, through on or about May 24, 2013, in a continuing course of conduct, in the District of Columbia and elsewhere, the defendant, **EMAD O. HAJASSAN**, did, directly and indirectly, corruptly give, offer, and promise a thing of value

4

to V.M.G., a DPW/PEMA public official, with the intent to influence an official act, that is, defendant **EMAD O. HAJHASSAN** gave thirty-five-thousand-three-hundred dollars ($35,300.00) in cash to V.M.G. in exchange for influencing V.M.G. in the performance of an official act, to wit, steering extra towing assignments to ABLE TOWING, INC.

**(Payment of a Bribe to a Public Official, in Violation of Title 18, United States Code, Section 201(b)(1)(A))**

**COUNT TWO**
**(Payment of a Bribe to a Public Official)**

15. Paragraphs one, three and ten through twelve are re-alleged and incorporated by reference as if fully set forth herein.

16. Beginning in or about January, 2011 through in or about June, 2013, in a continuing course of conduct, in the District of Columbia and elsewhere, the defendant, **EMAD O. HAJASSAN**, did, directly and indirectly, corruptly give, offer, and promise a thing of value to Public Official Number Two, a DCTC public official, with the intent to influence an official act, that is, defendant **EMAD O. HAJHASSAN** gave approximately twelve thousand dollars ($12,000.00) in cash to Public Official Number Two in exchange for influencing Public Official Number Two in the performance of an official act, to wit, steering DCTC towing and impoundment assignments to ABLE TOWING, INC.

**(Payment of a Bribe to a Public Official, in Violation of Title 18, United States Code, Section 201(b)(1)(A))**

**FORFEITURE ALLEGATION**

1. Upon conviction of an offense alleged in Count One or Count Two, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §

2461(c). The United States will seek a forfeiture money judgment against the defendant in the amount of $47,300 upon conviction for both offenses.

2.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY

By: _/s/ Lionel Andre /HAS_
LIONEL ANDRE
D.C. Bar No. 422534
MERVIN A. BOURNE JR.
ANTHONY D. SALER
D.C. Bar No. 448254
Assistant United States Attorneys
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530
202.252.7818 (Andre)
202.252.6979 (Bourne)
Lionel.Andre@usdoj.gov
Mervin.Bourne@usdoj.gov