## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 14-149 (Sealed)** |
| | : | |
| | : | **VIOLATIONS:** |
| | : | |
| **v.** | : | **18 U.S. C. § 201(b)(1)(A)** |
| | : | **(Payment of a Bribe to a Public** |
| | : | **Official)** |
| **EMAD O. HAJHASSAN,** | : | |
| | : | **FORFEITURE** |
| **Defendant.** | : | |
| | : | **18 U.S.C. § 981(a)(1)(C), 28 U.S.C.** |
| | : | **§ 2461(c), 21 U.S.C. § 853(p)** |

### STATEMENT OF OFFENSE

Individuals and Entities

1.      Defendant **EMAD O. HAJHASSAN**, a resident of Alexandria, Virginia, was the owner of ABLE TOWING, INC., which was located in 1800 block of Adams Mill Road, N.W., in the District of Columbia.

2.      Public Official Number One was a Customer Services Representative with the District of Columbia's Department of Public Works, Parking Enforcement Management Administration ("DPW/PEMA"), located in the 1700 block of 16th Street, N.E., in the District of Columbia.

3.      Public Official Number Two was a Public Vehicle Enforcement Inspector ("Hack Inspector") with the District of Columbia Taxicab Commission ("DCTC"), located in the 2000 block of Martin Luther King, Jr. Avenue, S.E., in the District of Columbia.

4.      The DCTC was a subordinate agency within the executive branch of the District of Columbia government with exclusive authority for intrastate regulation of the taxicab

industry.  The DCTC, among other things, established criteria, standards, and requirements for obtaining a taxicab license, including the licensing of owners, operators, companies, associations, and fleets.  It also established licensing fees and enforced Title 31 of the D.C. Municipal regulations governing taxicabs and vehicles for hire.  The DCTC employed a number of Hack inspectors who patrolled the District of Columbia to assure that taxicabs and other vehicles for hire were in compliance with the District's rules and regulations. Hack Inspectors were authorized to ticket, and in some cases tow and impound, vehicles that were not properly licensed, posed a public safety risk or were operating illegally in the District of Columbia. Taxicabs that were determined to be in violation of D.C. taxicab regulations were subject to towing and impoundment.

Payments to Public Official Number One for steering<br>DPW/PEMA towing assignments to Able Towing, Inc.

5.     The Department of Public Works (DPW) provided municipal services in two distinct program areas: environmental services/solid waste management and parking enforcement. Both services contributed to making District streets and public spaces clean, safe, attractive, and accessible. The DPW/PEMA provided for the removal of abandoned and dangerous vehicles, as well as ticketing, towing, booting, and impoundment of vehicles that were in violation of District of Columbia parking regulations.  DPW/PEMA also towed vehicles that posed a danger to the public or impeded the flow of traffic, particularly after vehicle accidents.

6.     DPW/PEMA utilized a Central Aided Dispatch (CAD) system which enabled DPW/PEMA to communicate with the Metropolitan Police Department in an orderly manner when the Metropolitan Police Department needed vehicles to be towed. Each DPW/PEMA Customer Services Representative was assigned a unique CAD user code and identification number.  All transactions that were entered, deleted or modified in the CAD system were tracked

and maintained under a user code and identification number. Public Official Number One was assigned a unique user code and identification number in the CAD system.

7.        DPW/PEMA did not have a sufficient number of tow trucks in their fleet to address all of the needs of the District of Columbia. As a result, DPW/PEMA subcontracted for towing services with approximately twenty-two authorized tow truck companies in the District of Columbia to assist DPW/PEMA with vehicle removals. DPW/PEMA required that all Customer Service Representatives rotate among all twenty-two companies to assure that requests for towing services were fairly distributed among the authorized providers. Specifically, DPW/PEMA protocol required that after notifying an authorized towing company of an assignment, the Customer Service Representative was responsible for logging the transaction into the CAD system and also entering the specific towing company assigned in a manual log so that the next authorized towing company could be utilized in the rotational listing on the next towing assignment.

8.        To become an authorized towing company on DPW/PEMA's rotational towing list, a towing company was required to maintain the following: (1) a license for a locked storage facility; (2) a towing license, and (3) an insurance policy. ABLE TOWING, INC. was on DPW/PEMA's rotational list of authorized towing companies.

9.        As a Customer Services Representative, Public Official Number One was responsible for, among other things, providing dispatching services for cranes, tow trucks and supplemental dispatching services for all types of towing requests to impound illegally parked vehicles, vehicles causing a safety hazard, emergency tows during snow emergencies, special events, vehicle accidents, as well as community events. In addition to receiving requests to tow vehicles, Public Official Number One also was responsible for entering accurate relevant

information into the appropriate computer system, and for dispatching the appropriate government or private towing company on a rotational basis.

10.    Beginning on or about every Friday afternoon from approximately July 1, 2011, and continuing through on or about May 24, 2013, defendant **EMAD O. HAJHASSAN**, the owner of ABLE TOWING, INC., personally deposited between $200.00 and $500.00 in cash into Public Official Number One's BB&T checking account ending in XXXX-5580.  In return, Public Official Number One utilized his/her  unique user code and identification number in the CAD system, to cancel towing assignments and re-assign them to ABLE TOWING, INC., outside of the  rotational towing assignment system.   As a result, ABLE TOWING, INC. received additional unauthorized towing assignments that the company was not entitled to receive.

Payments to Public Official Number Two for steering<br>DCTC towing assignments to Able Towing, Inc.

11.    During the period of in or about January, 2011 through in or about June 2013, DCTC utilized six(6) towing companies, including ABLE TOWING, INC., to tow and impound taxicabs that were in violation of D.C. taxicab regulations.

12.    From in or about January, 2011 through in or about June, 2013, defendant **EMAD O. HAJHASSAN**, the owner of ABLE TOWING, INC., paid the DCTC Hack Inspector, Public Official Number Two,  approximately $400.00 each month (or $12,000.00) to.  In return, Public Official Number Two steered approximately 80% of his/her  towing and impoundment assignments to ABLE TOWING, INC.

13.    This  factual  proffer  is  a  limited  summary  of  defendant  **EMAD O. HAJHASSAN**'s conduct in connection with Counts One and Two (Payment of a Bribe to a

4

Public Official), in violation of Title 18, United States Code, Section 201(b)(1)(A) of the

Information and is not intended to be a complete accounting of all facts and events that are

known to the Government.  The limited purpose of this Statement of Offense is to demonstrate

that a factual basis exists to support the defendant's guilty plea in this case.

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY

By:

LIONEL ANDRE
D.C. Bar No. 422534
MERVIN A. BOURNE JR
ANTHONY D. SALER
D.C. Bar No. 448254
Assistant United States Attorneys
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.  20530
202.252.7818 (Andre)
202.252.7899 (Egal)
Lionel.Andre@usdoj.gov
Mervin.Bourne@usdoj.gov

DATED: July 7, 2014

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense.  Pursuant to Fed. R. Cr. P. 11, after

consulting with my attorney, I agree and stipulate to this Statement of Offense.

Date: 8/21/14

_____
Emad O. Hajhassan
Defendant

I have discussed this Statement of Offense with my client, Mr. Emad O. Hajhassan.  I

concur with his decision to stipulate to this Statement of Offense.

Date: 8/21/14

_____
James T. Bacon, Esq.
Attorney for the Defendant

6