UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Plaintiff, | : | Criminal Action |
| | : | No. 14-149 |
| v. | : | |
| | : | |
| EMAD O. HAJHASSAN, | : | April 19, 2017 |
| | : | 10:00 a.m. |
| | : | |
| Defendant. | : | Washington, D.C. |
| | : | |
| ............................ | : | |

* * * SEALED * * *
TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE PAUL L. FRIEDMAN,
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the United States:   Mervin A. Bourne, Jr., Assistant
                         U.S. Attorney
                         U.S. ATTORNEY'S OFFICE FOR THE
                         DISTRICT OF COLUMBIA
                         555 Fourth Street, NW
                         Washington, DC 20530
                         (202) 252-6979
                         Fax: (202) 616-3782
                         Email: Mervin.bourne@usdoj.gov

For the Defendant:       James T. Bacon, Esq.
                         Allred, Bacon, Halfhill & Young, PC
                         11350 Random Hills Road
                         Suite 700
                         Fairfax, VA 22030
                         Phone: 703-352-1300
                         Fax: 703-352-1301
                         Email: Jbacon@abhylaw.com

```
 1    Appearances:   Cont.
 2
 3
      Court Reporter:           Scott L. Wallace, RDR, CRR
 4                              Official Court Reporter
                                Room 6503, U.S. Courthouse
 5                              Washington, D.C. 20001
                                202.354.3196
 6                              scottlyn01@aol.com

 7    Proceedings reported by machine shorthand, transcript produced
      by computer-aided transcription.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

<u>MORNING SESSION, APRIL 19, 2017</u>

1
2  (10:07 a.m.)
3       THE COURTROOM CLERK: This is criminal action 14-149,
4  *United States of America versus Emad O. Hajhassan.*
5       Counsel, please step forward to the podium and state your
6  appearances for the record.
7       MR. BOURNE: Good morning, Your Honor. AUSA Mervin A.
8  Bourne, Jr. for the United States.
9       THE COURT: Good morning.
10      MR. BACON: May it please the Court. Your, Honor, James
11 Bacon. I represent the defendant, Mr. Hajhassan.
12      THE COURT: Good morning. Good morning.
13      This case is still under seal, right?
14      MR. BOURNE: Yes.
15      THE COURT: And there are a lot of people here in the
16 courtroom.
17      Now, the question is whether, A, whether the case really
18 needs to remain under seal, and B, whether there's anything that
19 anybody is going to say in court that is of grave enough concern
20 that we're going to have to ask people to leave for at least part
21 of these proceedings.
22      MR. BOURNE: May I approach the bench with defense
23 counsel, Your Honor?
24      THE COURT: Yes, you may.
25      (Following sealed sidebar discussion had on the record:)

1    MR. BOURNE:  I totally expect that some of Mr. Hajhassan
2    relatives will want to speak, and I don't have an issue with
3    that.  However, there is still an ongoing investigation regarding
4    the person who Mr. Hajhassan bribed, as well as the Office in
5    general.
6         THE COURT:  Okay.  So you are talking about --
7         MR. BOURNE:  Mr. Scott.
8         MR. BACON:  Mr. Scott.
9         THE COURT:  -- Mr. Scot.  And then there's also the second
10   count of the plea.  Is that still under investigation?
11        MR. BOURNE:  That is not still under investigation, but
12   the names might come up of people that have not been indicted or
13   otherwise publically named.
14        THE COURT:  And is Mr. Scott also the person that you
15   referred to in your filing this morning?
16        MR. BACON:  Yes, Your Honor.
17        THE COURT:  The drug business?
18        MR. BACON:  Right.
19        THE COURT:  I think there's going to be a lot of
20   discussion about that, and I think that the bottom line for me is
21   that he committed a crime, allegedly, while he was awaiting
22   sentencing; he violated his conditions of release by doing so; he
23   committed a bribe similar to the other bribe.  There's no way
24   he's getting probation if those facts are demonstrated by a
25   preponderance of the evidence, which I think have already been

1  done by virtue of what was said in the 302s. So I'm happy to
2  hear from the family members, but as far as I'm concerned, he
3  violated his conditions of release, and had the government known
4  about it and had brought it to my attention, I would have locked
5  him up, okay.
6      I cannot see anything under 3553(a) that there's anything
7  other than prison. So, that's where I am. And if you want to
8  come up with some better arguments, you can postpone this
9  sentencing, but these family members are going to be very
10 disappointed. No matter what they say, there are countervailing
11 issues that just -- there are countervailing claims here that are
12 very, very strong, and, you know, I'll hear about all this stuff
13 about his concern for his safety and what the government wants to
14 say about that, and I don't know whether the government may want
15 to call any witnesses on this or whether it's all laid out in the
16 302s.
17     MR. BOURNE: I do have an agent here who's prepared to
18 testify if need be.
19     THE COURT: Well, I mean, there seems to be a factual
20 dispute about whether he told the agents about his concern for
21 his safety and whether he asked about --
22     MR. BACON: It's in the 302. I was going to cite it. I
23 think it probably is best if we continue this because we're going
24 to need to put on, sounds like, evidence on both sides, and I'm
25 going to need to reference with the agent the 302 where he writes

1  those very words.
2      THE COURT:  Another way we can do this, either today or on
3  another day, is to divide this into two parts.  We could have a
4  part that's totally under seal with no family members present and
5  nobody else present except any witnesses that you all want and
6  law enforcement people you want -- and you may want to talk to
7  your client about that -- if he wants to testify or whether
8  there's anybody that he wants to proffer as a witness, and
9  separate that part from the allocution part.  That's one way to
10 do it.  Or we could do it all in one day, but we could have one
11 session which would be just witnesses behind closed doors, and
12 then have the family members who want to speak -- and if you
13 wanted to file anything further in advance, we could do that.
14 So, I'm happy to postpone it if you want.  I want to give him
15 every chance to make his best case, but I think, in my view,
16 based upon what I've read in the filings, and I haven't reached a
17 final conclusion, obviously, because I haven't heard from
18 anybody, but based upon what I've read, I think that -- you
19 describe it as his lapses in judgment, and I'm afraid I view it
20 as something totally different.  Here's a guy who committed two
21 bribes in a period of two years, two-and-a-half years, pled
22 guilty, said he was sorry, accepted responsibility, he ended up
23 cooperating with the government, and then for whatever reason,
24 and that would be, I guess, the point of the hearing, goes out
25 and commits -- spends another year committing bribes without --

1  supposedly while cooperating with the government, and when
2  looking at the conditions of his release, one of them is don't
3  commit any other crimes, and it's the exact same conduct. And
4  the argument -- and frankly, the things in the letters that this
5  was a lapse, he'll never do it again, he's a good man, well, he
6  was doing it again, at the very same time that all his relatives
7  were writing these letters saying these wonderful things about
8  him -- and I'm not suggesting that there aren't wonderful things
9  to be said about him -- the very time that they were saying all
10 these things about how confident they are that he would never do
11 anything like this again, he was doing something like this again.
12 So that's where I'm coming from, based on the filings and the
13 things that I've read.
14     Now, there may well be things that can be provided in
15 supplemental findings which can be under seal or through
16 testimony on both sides to, you know, sort of get all these facts
17 out, see what the government can prove by a preponderance of the
18 evidence. Some of it comes from his own debriefings, and some of
19 it doesn't, I guess, and what he wants to say to counter it,
20 either in testimony or statements or whatever.
21     But, you know -- I know I'm going on a long time and I'll
22 let you speak in a minute, but the family members are --
23 regardless of where the facts lie about his motivation and so
24 forth, the family members in writing these very moving letters,
25 they have partial information, so therefore what they have to say

1   has to be balanced with what's in the case.

2   　　　　MR. BACON:  Legally, the distinction that I tried to make
3   as briefly as I could and briefly as I could last night was the
4   difference between remaining silent and making false affirmative
5   statements.  The commentary in the notes that I cited referenced
6   the ability to remain silent and not say anything about other
7   possible crimes versus talking about and misrepresenting that,
8   and the focus of the 3E1.1 is, I respectfully submit, on a
9   hundred percent truthfulness on the offense for which you are
10  involved --

11  　　　　THE COURT:  That's sort of one point.

12  　　　　MR. BACON:  -- given the Fifth Amendment.

13  　　　　THE COURT:  What about the Fifth Amendment?  If they had
14  known about this crime and brought it to my attention,
15  cooperation would have been over in September of 2015.  He would
16  have been locked up because I would have revoked his bond, more
17  than likely.  He would have been sitting there until sentencing.
18  3E1.1 would be out.  5K1.1 would be out.

19  　　　　Now, the fact that they learned this from him, as far as I
20  am concerned, is irrelevant to the fact that he committed another
21  crime exactly like this crime for which he could be indicted
22  again.  But in any event, the idea that he could be trusted while
23  on probation, that the community could be protected, is belied by
24  the facts that took place between the time of his plea and
25  September of 2016.  And, you know, the 3E1.1, he didn't have

1  to -- maybe he didn't have to say anything, but he did.
2          MR. BACON: And then he continued to cooperate after that
3  for another six months because there was that level of --
4          THE COURT: We're going to get all these facts and the
5  chronology out on the record. I don't see that he gets a 3E1.1,
6  and I see that he gets seriously disadvantaged by his criminal
7  conduct. The government's asking for 33 months. That may be too
8  much. I'm thinking more like two years, okay. So you just
9  better keep that straight when you talk to him and his family
10 members. He is more than likely going to be locked up. It may
11 be something like two years, maybe 18 months. It may be 30
12 months. I don't know yet. But, you know, you have to address
13 the fact that he committed a crime irrespective of how the
14 government learns about it. He committed a crime. He
15 participated in the exact same conduct that got him in trouble
16 the first time. He cannot be trusted not to do it again, and he
17 is a recidivist, and the government might indict him for it; they
18 might not indict him for him. There may be evidence, depending
19 on Mr. Scott, and we can talk about it, I guess, whether he was
20 motivated by fear or whether he was motivated by the need for
21 more money, or whether he, you know, just went back to -- it's a
22 good thing to get a sole source contract. He did it before, he
23 did it again, and he should be punished for that. The community
24 needs to be protected from him. There needs to be deterrence.
25 That's where I'm coming from. And so all this stuff about

1  acceptance of responsibility, I'll decide whether he gets
2  acceptance of responsibility. Fine. Whether he gets acceptance
3  of responsibility or not, it doesn't mean he gets probation. It
4  means I look at the Guidelines, whatever they are, and decide
5  where in the guideline range is a fair sentence or whether I vary
6  upward or downward.
7      MR. BACON: Your Honor, is -- in your consideration, is
8  home confinement an option, or not?
9      THE COURT: No. If you can persuade me, but based upon
10 what I've learned by reading his file, he needs to go to prison,
11 okay, and you better get him ready for that and you better get
12 his family ready for that. And whatever you want to bring to my
13 attention about why -- you know -- you've got to separate out the
14 issues that are -- I'm really sorry I didn't have a headset for
15 your client. If you feel you need a rough copy of the
16 transcript, maybe we can get your client to see that.
17     MR. BACON: That would be very helpful. I can order it.
18 Let me just say this. You have a couple of separate issues. One
19 is the guideline calculations, and in that regard, your arguments
20 to date -- you may want to supplement them or not -- about why
21 3E1.1 applies versus the government's arguments regarding why
22 not. And by the way, the quote from the unpublished opinion that
23 you cited, it is not actually from the opinion, it's from the
24 government's appellate brief.
25     MR. BOURNE: My mistake. I had them side-by-side.

THE COURT: Because if you read the -- it's -- I don't dispute that those were the facts in that case, but the actual opinion is so short that it doesn't --

MR. BOURNE: Right. My mistake.

THE COURT: So we can debate the 3E1.1 issue, and I think what -- you know, we can debate a lot of things, but as I understand the law regarding this, they have no obligation to file a 5K1.1 motion if they decided not to. There's no obligation to ask for the extra point if they decided not to.

So, unless I'm missing something, the question is whether I should consider 2 points under 3E1.1 under the guideline calculations. Once I figure that out under the calculations, then we get into the relevant sentencing factors under 3553(a), and that's where I think the comments I made so far this morning apply.

In my view, that's separate from the Fifth Amendment issue. That's separate from the 3E1.1 issue. There are three different paragraphs in the plea agreement. If he commits another crime, all bets are off. If you look at -- I don't have a copy, but it's on the back of the release form. The defendant gets a carbon copy. The back of this release form: "The commission of any offense on pretrial release may result in an additional penalty at sentence upon conviction of such offense, and a violation under these conditions, including committing a crime, could result in revocation of your release." There are a

lot of people in this courthouse that aren't out on bond pending trial, pending plea, pending sentence, a lot. And Mr. Hajhassan is a man who's got a lot of family support and he's got a business or businesses that he runs, and he's a respected person in the community, so there are also good reasons why he was released on bond, but had his subsequent conduct come in, he plead guilty, admitted his guilt, and then you go out and do the same thing with the same agency -- we can argue about motivation, as to why -- had the government come upon that information independently, I probably would have -- I don't know if they would have stopped debriefing, but they certainly would have confronted him, and I think, as officers of the Court, they probably had an obligation to bring it to my attention, if they had known about it a year ago instead of just a couple of months ago, I probably would have locked him up.

So, you know, those are 3553(a) factors, and 3E1.1 at the end of the day may be a minor footnote, since the guidelines are no longer -- If the guidelines are mandatory, then it becomes important, if the government doesn't file a 5K1, because I wouldn't have any discretion. Now, if the guidelines are advisory, yes, I have to figure out what to do about 3E1.1 and whether the original guideline range in the presentence investigation report was -- it is the right one or whether the guidelines range --

THE COURT REPORTER: I'm sorry, Judge. Say that again.

1        THE COURT: Whether the guideline range that the
2   government is now proposing is the right one, and then we get
3   into the 3553(a) factors.
4        On the one hand, the government is going to argue soon, I
5   know because of what I've read, regarding some of the things that
6   I've said are bothering me, and you're going to have counter
7   arguments to that as to what his motivations are, and then I'll
8   hear from family members. I've read all the letters, they're
9   very impressive, but -- and I have to balance that, but I really
10  think that he'll have a very difficult time persuading me that a
11  straight prison term is not appropriate in view of what he's done
12  since the day of his plea. It's to protect the community, the
13  integrity of the Court system, and to deter him from further
14  similar conduct. So that's where I'm coming from.
15       MR. BOURNE: If I may, Your Honor. In the interest of not
16  waisting the Court's time in terms of additional testimony and
17  hearings and what have you, the government is not going to
18  dispute anything that's in the 302s. We're not going to dispute
19  that at various points, Emad Hajhassan acknowledged that he was
20  dealing with what he called bad people or bad guys, that he
21  expressed that he was intimidated. But also, on every one of
22  those occasions every time we met with him, we asked him
23  specifically, have you been threatened, is your safety at risk.
24  We asked him that specifically routinely for the past couple of
25  years. And at no point was any specific threat brought to the

```
 1   government's attention.  So, I don't know -- I don't want to give
 2   the impression that there's going to be a major dispute when, in
 3   reality, there may not be any disagreement on the facts.
 4        MR. BACON:  Under the --
 5        THE COURT:  So do we want to continue?
 6        MR. BACON:  I would like to respond.  Your Honor's order,
 7   I thought Your Honor was focused on the 3E1.1.  Given last
 8   night's order, I thought that's where the emphasis would be
 9   today, and I apologize for that.
10        So, I would like the opportunity to address the brief that
11   I received in the e-mail this morning --
12        THE COURT:  Both of you were under a lot of time
13   restraints.
14        MR. BACON:  -- and schedule this for a hearing, as well as
15   get the family ready for what appears to be inevitable.
16        THE COURT:  Nothing is inevitable, but I'm telling you
17   where my current thinking is.  And until I hear from -- read
18   everything that you submit and hear everything that you want to
19   say, I haven't made a decision, but I'm telling you what my
20   thinking is.
21        Okay.  So, I guess one of the fact questions is whether he
22   ever asked any of the agents for protection prior to sentencing.
23        MR. BACON:  I can point that out in the 302.  I can get it
24   and show it to you.
25        THE COURT:  Well, you can do that at the hearing.
```

```
 1          MR. BACON:  Yeah, that's fine.
 2          THE COURT:  So, I guess one question is, since this matter
 3  is under seal -- we have to figure out a way for Mr. Hajhassan to
 4  read your rough version of this transcript.  What's the best way
 5  to do this, a rough version versus --
 6          (Discussion had off the record between the Court and the
 7  court reporter.)
 8          THE COURT:  I'm sorry that I didn't give him a heads up
 9  earlier.  Maybe reading the whole transcript will be better.
10          MR. BACON:  I think that is a perfect way to handle it,
11  Your Honor.
12          THE COURT:  So, I think what we should do is go back in
13  open court, say "for reasons we discussed at the bench, we will
14  continue the hearing," and you want to file something -- and you
15  may or may not want to file something.  So that's good.  So we
16  can pick a date for a continued hearing and you can look at your
17  calendars when you get down there.  How much time do you need, 30
18  days?
19          MR. BACON:  Maximum.
20          MR. BOURNE:  That's fine.  Does Your Honor think it makes
21  sense to hear from the family members that are here today as
22  opposed to waiting until the next hearing to --
23          THE COURT:  The only reason -- I leave that up to
24  Mr. Bacon, but it seems to me, at least with respect to some of
25  them, he may want to -- I think there may be expectations that
```

1    probation or some home confinement or something is likely, and it
2    may be that Mr. Bacon will want to convey to them that it's not
3    going to be quite as straightforward as that.
4         MR. BACON:  I would prefer to have them read this
5    transcript and have an understanding.
6         THE COURT:  I'm not sure I want them to read the
7    transcript.
8         MR. BACON:  For me to explain the transcript to them.
9         THE COURT:  Explain the conversation.
10        MR. BACON:  So that they have a better understanding so
11   that their remarks are more focused because --
12        THE COURT:  Let me ask you this, just as a matter of -- I
13   think your client is the only one who should read the transcript,
14   okay.  Are all of these people are aware of what happened in the
15   interim?
16        MR. BACON:  Yes.
17        THE COURT:  Okay.
18        MR. BACON:  They -- Well, we all found out.
19        THE COURT:  Okay.
20        MR. BACON:  And they found out more recently than, of
21   course, I did.
22        THE COURT:  So I just -- this is between you and your
23   client and his family members, how much you want to share with
24   each of them.  Maybe you can share more information with some
25   than some of the others.  I mean, I don't know whether I

```
 1   should -- sounds like it's a very close-knit family, but
 2   certainly my level of concern and how serious I view what's
 3   happened, whatever anyone wants to say is fine.  But I do think
 4   that -- so, I think you're clear that I view this much, much more
 5   than a lapse in judgment, and it's much more than the 3E1.1 issue
 6   at this point.  So, okay.
 7          So, I guess we'll get calendars.  Today is April 20th --
 8   April 19th, so we'll look to May -- you may want to file
 9   something.  We're up to the week of the 8th or 15th or whatever.
10          MR. BACON:  We'll check our calendars.
11          (Previously sealed sidebar proceedings concluded and the
12   following further proceedings were held in open court.)
13          THE COURT:  So this entire hearing is under seal for a
14   variety of reasons, but I'm authorizing Mr. Wallace to make a
15   copy of the transcript available to counsel for each side, not to
16   be photocopied, not to be shared with anybody other than
17   Mr. Bourne can share it with his agent.  Again, not to be copied,
18   though, and Mr. Bacon can share it with his client, but not
19   beyond his client.  There may be certain things that were said at
20   the bench that Mr. Bacon may decide to share with some of the
21   family members orally but not by showing them the transcript.  It
22   just -- if we've got a proceeding under seal, it's for a series
23   of reasons, not all of which relate to Mr. Hajhassan himself but
24   may relate to other individuals, including ongoing
25   investigations, possibly.
```

1   But for the reasons we discussed at the bench, we're going
2   to postpone the sentencing to another day, and we will pick a day
3   now, and I'd ask counsel to agree upon a schedule for filing
4   whatever they're going to file so that I have at least a few days
5   beforehand.  So, what are your calendars look like?
6       MR. BACON:  Your Honor, we've agreed to May the 16th,
7   Tuesday, May the 16th, if that's available.
8       THE COURT:  Sure.
9       MR. BOURNE:  And can I take a quick moment to confer with
10  my agents?
11      THE COURT:  Sure.
12      (Brief pause in proceedings.)
13      MR. BOURNE:  That date is fine.
14      THE COURT:  Is 10 a.m. good?
15      MR. BOURNE:  Yes, Your Honor.
16      MR. BACON:  Yes, Your Honor.
17      THE COURT:  If you're going to file things in advance, do
18  you want to file them simultaneously or does one side want to see
19  what the other side -- I'm wondering, Mr. Bourne, if you want to
20  see what Mr. Bacon says first?
21      MR. BOURNE:  I would, Your Honor.
22      THE COURT:  So, if we are here on May the 16th at 10:00,
23  and if we need to take testimony, we'll take testimony, and if we
24  need to exclude certain people from part of the hearing, we can
25  exclude certain people from part of the hearing, but you can sort

```
 1   that out.  So when would you like to file something, Mr. Bacon?
 2        MR. BACON:  Your Honor, is Monday, May the 1st, too late?
 3        THE COURT:  No.  In fact, I was going to suggest, if you
 4   want more time, you can take more time.
 5        MR. BACON:  How about Tuesday the 2nd, is more than enough
 6   time.
 7        MR. BOURNE:  That's fine with the government.
 8        THE COURT:  And so, what do you want, a week from that?
 9        MR. BOURNE:  Yes, Tuesday, May 9th.
10        THE COURT:  So May 9th for Mr. Bourne.  And I'm not
11   necessarily encouraging a reply, but in case there's something
12   that really -- let's say May, the 12th for that.
13        MR. BACON:  Thank you, Your Honor.  And I'm sorry I didn't
14   think about it until we were already at the bench.  I could have
15   given Mr. Hajhassan a headset so he could have heard our
16   conversation, but that's why we're going to make the transcript
17   available just to counsel and to Mr. Hajhassan.  I'll see you
18   back here on the 16th, counsel.  Anything else, gentlemen?
19        MR. BOURNE:  If you could address conditions of release,
20   that they remain the same.
21        THE COURT:  Oh, sure.  Mr. Hajhassan, stand up for just a
22   moment, sir.  So, the same conditions of release that you've been
23   on for the last couple of years apply.  You know what those
24   conditions are.  And you need to be back here at -- by 10:00 on
25   May 16th, okay.
```

THE DEFENDANT:  Okay.

THE COURT:  All right.  See you then.

(Proceedings adjourned at 10:38 a.m.)

# C E R T I F I C A T E

I, Scott L. Wallace, RDR-CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Scott L. Wallace                              4/19/17
-------------------------------            ----------------
Scott L. Wallace, RDR, CRR                          Date
Official Court Reporter